ROSSVILLE TOWNSHIP, OF SHAWNEE COUNTY, KANSAS, v. THE ALMA NATIONAL BANK *et al.*

No. 15,438.   (98 Pac. 234.)

SYLLABUS BY THE COURT.

BRIDGES—*Authority of Township Boards.* Section 7826 of the General Statutes of 1901 does not authorize township boards to provide, either in whole or in part, for the construction of a bridge costing $15,000, and a subscription made by such a board for such purpose in the sum of $1200 is void.

Error from Shawnee district court; ALSTON W. DANA, judge. Opinion filed November 7, 1908. Reversed.

*J. J. Schenck,* for plaintiff in error.

*F. B. Dawes,* and *C. P. Rutherford,* for defendants in error.

The opinion of the court was delivered by

GRAVES, J.: This action was commenced in Shawnee county by the Alma National Bank to recover upon a township warrant issued by Rossville township to the Leavenworth Bridge Company, and by it assigned to the bank. A demurrer to the petition was overruled by the court, and the township brings that question here for review.

The facts contained in the petition were substantially as follow: Prior to the year 1903 there was a bridge across the Kansas river which connected Rossville township in Shawnee county and Maple Hill township in Wabaunsee county. During the year 1903 this bridge was swept away by the high waters of that season. The bridge constituted a part of the public highway between the townships named. An effort was made to have the bridge reconstructed, and to that end subscriptions were made by each of such counties and townships. The Rossville township officers—trustee, clerk, and treasurer—on August 26, 1903, met and agreed, for the township, to give the sum of $1200 toward the rebuilding of the bridge. A copy of the proceedings of this meeting reads:

"ROSSVILLE, KAN., August 26, 1903.

"At a meeting of the township board of Rossville township, held at the Rossville State Bank, it was agreed to give $1200 (twelve hundred) toward the reconstruction of the Maple Hill-Rossville bridge. Those present at said meeting were W. J. Kirkpatrick, F. P. McCullough, I. B. Alter, and H. G. Adams."

Notice of such action was given to the board of county commissioners of Wabaunsee county, which reads:

*"To the honorable board of county commissioners*

*of Wabaunsee county:* GENTLEMEN—We, the undersigned, the township of Rossville township, have this day agreed with H. G. Adams to give $1200 (twelve hundred) toward the reconstruction of the Maple Hill-Rossville bridge. The above, amount to be paid either to your county board or to the bridge company building the bridge. The same to be paid when said bridge is completed.    W. J. KIRKPATRICK, *Trustee.*

I. B. ALTER, *Township Treasurer.*

F. P. MCCULLOUGH, *Twp. Clerk."*

The subscriptions made by this and the other municipalities aggregated the sum of $15,000. A contract was made by the board of county commissioners of Wabaunsee county with the Leavenworth Bridge Company to build the bridge. The bridge company constructed the bridge .in accordance with such contract, and after its completion the board of county commissioners of each of such counties, and the boards of each of such townships, met at the bridge, examined and inspected it, and accepted the same as being in accordance with the contract under which it was built. The bridge afterward was opened for public travel, and it has ever since been used as a part of the public highway.

The officers of Rossville township, after the bridge was completed, issued to the Leavenworth Bridge Company a township warrant, in payment of the subscription made for the construction of the bridge, which reads:

"State of Kansas.          No. 114.          $1200.

"*To I. B. Alter, P. O. Rossville, Treasurer Rossville Township, Shawnee County:*

"Pay to the order of the Leavenworth Bridge Company twelve hundred dollars out of general fund for Rossville township for rebuilding Maple Hill-Rossville bridge, as allowed by the township board.

W. J. KIRKPATRICK, *Township Trustee.*

"Countersigned:

F. P. MCCULLOUGH, *Township Clerk.*

————————, *Treasurer."*

On December 22, 1904, this warrant was presented by the bridge company to the township treasurer, who indorsed it as follows:

"Presented for payment, but not paid for want of funds.                    I. B. ALTER, *Treasurer*.

"December 22, 1904. Registered No. 114."

The subscription made by the township board of Rossville township was not authorized or ordered by a vote of the electors of the township, and the available means of the township at the time the subscription was made did not exceed the sum of $91.27, and has not since exceeded the sum of $276.75. The township board of Rossville township acted in good faith and, as they believed, for the best interests of the township and in compliance with the wishes of the people. On January 20, 1905, the bridge company sold the warrant to the plaintiff bank and guaranteed the payment thereof.

It is claimed by the township that the subscription made by its officers was absolutely void for the want of power in them to make it. The only power given to townships to build or reconstruct bridges is contained in one or the other of the following statutes. Section 479 of the General Statutes of 1901 reads:

"The board of county commissioners of any county, the mayor and common council of an incorporated city, and the trustee, clerk, and treasurer of any municipal township in this state, are hereby empowered to issue the bonds of such county, city or township, in any sum not greater than five per cent., inclusive of all other bonded indebtedness, of the taxable property of such county, city or township, for the purpose of building or purchasing bridges, free or otherwise, and for the purpose of purchasing land and erecting buildings thereon for the poor; provided, that the limit prescribed in this section shall not apply and be considered to restrict or prevent the issuing of any bonds heretofore voted, or vote now pending in any county, city or township in this state, and which bonds may not have yet been isued."

The issuance of these bonds is limited by section 481 of the General Statutes of 1901, which reads:

"Before any bonds shall be issued, as herein provided, the same shall be ordered by a vote of the qualified electors of such county, city, or township."

No steps were taken to issue bonds by Rossville township, and therefore this statute can not apply. The authority is claimed to exist in section 7826 of the General Statutes of 1901, which reads:

"The said board shall have charge of the roads and bridges of their respective townships, and it shall be their duty to keep the same in repair, and to improve them so far as practicable. Whenever the available means at their disposal will permit, they shall construct permanent roads, beginning where most needed. The work on roads shall be done timely, and in accordance with the best-known methods of road-making—by proper grading, and thorough drainage by tile or otherwise, as may be expedient, or by the application of gravel, rock, or other material."

We are unable to find any authority in this statute which justifies the act herein complained of. The only expenditures therein contemplated are such as are incidental to ordinary road work, such as making culverts, building small bridges, digging ditches for drainage purposes, making and repairing necessary grades, and other work usually done by road-overseers. Such improvements do not require a very large expenditure, and the aggregate cost of them could be met by the ordinary levy of road taxes. The construction of a bridge across such a stream as the Kansas river, either by the township alone or jointly with others, is entirely beyond the scope of this law. If this township board could bind the township for $1200, why not for $12,000?

It is true that the bridge is of great convenience to the people of Rossville township, and it seems fair and reasonable that they should contribute to its construc-

tion; but this is not sufficient to compel them to do so. Taxpayers are not bound by the contracts of officers who assume to act for them without authority. People who build public bridges worth $15,000, which they know must be paid for with taxes levied, in part at least, upon the unwilling taxpayer, should not deal with public officials concerning matters for which they do not possess full legal authority to act. If this were a small bridge or other improvement which would come within the contemplation of the statute in question, like the bridge involved in the case of *Coal Co. v. Sugar Loaf Township*, 64 Kan. 163, 67 Pac. 630, this court would be glad to apply the law as was done in that case. We think, however, that the rule there applied should not be extended. It has long been the policy of this state to keep the taxing power within reasonable limitations, and to require public officers having power to create public indebtedness to act within the limits of the powers conferred upon them; and, for all important public expenditures, it has been customary to submit the question to a vote of the people who will be expected to pay the debt. To uphold the subscription here involved would confer upon township boards powers not given or contemplated by the law—powers which would enable them to involve their constituents in liabilities for road and bridge purposes practically without limit. This can not be done. Under the rule here adopted township boards have full power to carry out the purposes of the statute, while the taxpayers are protected from expenditures which are not reasonably within the scope of its provisions. The question is not without difficulty, but this seems to us to be the best solution that can be given to it.

The judgment of the district court is reversed, with direction to sustain the demurrer and proceed with the case in accordance with the views herein expressed.